# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | CASE NO. 4:23-CR-274 |
| v. § | Judge Mazzant |
| § | |
| DWAYNE RAY MIXON (35) § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Dwayne Mixon's Motion for Revocation of Detention Order (Dkt. #493). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED.**

## BACKGROUND

Defendant Dwayne Mixon ("Mixon") was arrested on July 2, 2024, in Irving, Texas. Count 1 of the Third Superseding Indictment charges Mixon and eight co-defendants with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Dkt. #280).[1] Following Mixon's arrest, Pretrial Services recommended that he be detained pending trial because, in its view, there exists no condition or combination of conditions that would reasonably assure (1) Mixon's appearance or (2) the safety of the community (Dkt. #8).

On August 12, 2024, a detention hearing was held before United States Magistrate Judge Kimberly C. Priest Johnson (Dkt. #470). At the hearing, the Government called DEA Special Agent Sean Reilly in support of its Motion to Detain (Dkt. #423; Dkt. #470). Mixon did not present any witnesses (Dkt. #423; Dkt. #470). Upon the Government's Motion, Magistrate Judge Priest

---

[1] The Third Superseding Indictment names thirty-nine defendants in total, nine of whom (including Mixon) are charged under Count 1 (Dkt. #280).

Johnson ordered that Mixon be detained pending trial (Dkt. #423). Citing Special Agent Reilly's testimony and the Pretrial Services Report—both of which outlined Mixon's arrest history and propensity for failing to appear when ordered by the court—Magistrate Judge Priest Johnson determined that "there are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community or reasonably assure Defendant's appearance as required" (Dkt. #423 at p. 4).

On November 22, 2024, Mixon filed a Motion for Revocation of Detention Order (Dkt. #493). Through it, he argues that his strong family ties rebut 18 U.S.C. § 3142(e)(3)'s presumption of detention and insists that "there are a number of conditions this court can impose to ensure the safety of the community, as well as his appearance in Court" (Dkt. #493). The Government disagrees. Accordingly, on December 23, 2024, the Government filed its Response to Defendant's Motion to Revoke Detention Order (Dkt. #517). In its Response, the Government contends that Mixon did not present sufficient evidence to rebut the presumption of dangerousness and nonappearance (Dkt. #517 at p. 6). In the alternative, the Government submits that, even if he did meet his burden, the Government has proven by clear and convincing evidence that no condition or combination of conditions of pretrial release would reasonably assure the safety of the community, and that it has proven by a preponderance of the evidence that no condition or combination of conditions of pretrial release would reasonably assure Mixon's appearance (Dkt. #517 at pp. 6–7). For the reasons that follow, the Government is correct on both fronts.

## LEGAL STANDARD

The Bail Reform Act of 1984 (the "Act"), 18 U.S.C. § 3141, *et seq.*, empowers a court to order a defendant's detention pending trial upon a determination that "no condition or

2

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Through the Act, Congress recognized "the traditional presumption favoring pretrial release 'for the majority of Federal defendants.'" *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). The Supreme Court has observed that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 754 (1987).

In deciding the question of detention, the Court performs two important functions. First, the Court exercises its historical right to preserve its jurisdiction in criminal cases by ensuring that a defendant will appear as required to face pending charges. *See Berrios-Berrios*, 791 F.2d at 250. Second, the Court also considers the legitimate societal interest implicated by the release of defendants charged with serious crimes. Under the Act, the inquiry is focused upon two highly relevant issues: (1) whether the defendant is likely to present a risk to flee the jurisdiction, if released; and (2) whether the defendant presents a risk of danger to the community, if released. *See* 18 U.S.C. § 3142(g).

By its very language, the Act demonstrates its favorable inclination toward the pretrial release of federal criminal defendants. For example, the Act requires that the Court must order release on personal recognizance or on an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the Court cannot find that such unconditional release will reasonably assure appearance as required or guard against danger to the community, then release shall be ordered upon "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure

the appearance of the person as required and the safety of any other person and the community," including, though not limited to, conditions specifically listed within the statute. 18 U.S.C. § 3142(c)(1)(B).

Whether a defendant should be released turns on whether the Court determines that the Government has proven by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of a person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person or the community." 18 U.S.C. § 3142(e)(1), (f)(2). In making these determinations, the Act requires the Court to consider four factors: (1) the nature and circumstance of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

The Act further instructs that when a defendant is charged with certain enumerated offenses, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). One such enumerated offense giving rise to the rebuttable presumption is "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)." *Id.* § 3142(e)(3)(A) (cleaned up). Here, Mixon, having been charged with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Dkt. #280), is subject to the § 3142(e)(3) presumption (*See* Dkt. #423). Thus, the Court must presume that he is a danger to the community, a flight risk, and that no combination of pretrial release conditions could reasonably mitigate those risks.

4

Once the § 3142(e)(3) presumption arises, the Act permits a defendant to rebut the presumption of danger and nonappearance by presenting evidence of the § 3142(g) factors outlined above. Accordingly, the first step in the Court's inquiry is to determine whether Mixon has presented sufficient evidence to rebut the § 3142(e)(3) presumption. Because this is an appeal of a magistrate judge's detention order under 18 U.S.C. § 3145(b), the Court will review Magistrate Judge Priest Johnson's order *de novo*. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). If Mixon has rebutted the presumption, the Court must apply the § 3142(g) factors to determine the ultimate question of whether Mixon should be detained pending trial. *See United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988).

## ANALYSIS

Mixon appeals Magistrate Judge Priest Johnson's Detention Order and moves for release on bond with conditions (Dkt. #493). Mixon argues that he is neither a flight risk nor a danger to the community because: (1) his strong family and community ties rebut the presumption of detention; (2) his prior criminal history does not involve violent or assaultive offenses; and (3) separating Mixon's conduct from his thirty-eight co-defendants undermines the severity of the offense with which he is charged (Dkt. #493 at pp. 6–9). As an alternative to his detention, Mixon argues that the following conditions of release under § 3142(c)(1)(B) would reasonably assure his appearance as required and the safety of the community:

- **Third Party Custodian:** The Court may designate a third-party custodian. His mother, Sandra, and his common-law relationship, Akilah, have already expressed their willingness "to assume supervision and to report any violation of a release condition to the court." 18 U.S.C. § 3142(c)(1)(B)(i).
- **Location Monitoring:** The Court could order that Mr. Mixon's location be monitored and, if necessary, place location restrictions on Mr. Mixon's travel.

- **Employment:** Maintain or actively seek employment or enroll in educational programming or job training.

(Dkt. #493 at p. 10). Having reviewed the arguments of counsel, the Pretrial Services Report, and the transcript of the detention hearing before Magistrate Judge Priest Johnson, the Court finds Mixon's arguments unavailing.

### I. Rebuttable Presumption Under § 3142(e)(3)

The Court begins with the presumption governing this case. As discussed, the rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies here. 18 U.S.C. § 3142(e)(3); 21 U.S.C. § 846. Mixon has been indicted under the Controlled Substances Act and faces imprisonment of not less than ten years and not more than life imprisonment. 21 U.S.C. §§ 841, 846(b)(1)(A)(II). Thus, this is a presumption case.

As the Government observes in its Response to Mixon's Motion to Revoke, the Third Superseding Indictment provides probable cause to believe that Mixon committed the charged offense (Dkt. #517 at p. 5) (citing *United States v. De Ballin*, No. 4:21-CR-058, 2021 WL 1600290, at *2 (E.D. Tex. Apr. 20, 2021) (internal citations omitted)). *See also United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987) ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Special Agent Reilly's testimony at the August 12 detention hearing also supports the finding of probable cause (Dkt. #470 at pp. 15–16). *See Fortna*, 769 F.2d at 252–53. Hence, the burden falls upon Mixon to produce sufficient rebuttal evidence.

Having determined that the § 3142(e)(3) presumption applies, the Court must next evaluate whether Mixon has produced sufficient evidence to rebut the presumption of detention.

As Mixon correctly recognizes in his Motion to Revoke (Dkt. #493 at p. 5), once the § 3142(e)(3) presumption arises, Mixon "bears 'only the burden of *producing* rebutting evidence, not the burden of persuasion.'" *United States v. Yusuf*, No. 4:19-CR-271-SDJ, 2020 WL 607105, at *3 (E.D. Tex. Feb. 7, 2020) (quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (emphasis in original)). But the Fifth Circuit has cautioned that the presumption "is not a mere 'bursting bubble' that totally disappears from the judge's consideration" after the defendant meets his burden of production. *Hare*, 873 F.2d at 798. Indeed, "the mere production of evidence does not *completely* rebut the presumption, and in making its ultimate determination," the Court should consider the presumption as a relevant factor to its detention analysis. *Id.* (emphasis added). After reviewing the record, the parties' filings, Special Agent Reilly's testimony at the detention hearing, and the Magistrate Judge's Order (Dkt. #423), the Court is not convinced that Mixon has produced sufficient evidence to rebut the presumption of detention.

    A.  **Mixon's Rebuttal Evidence**

Mixon did not present any witnesses during his detention hearing before Magistrate Judge Priest Johnson, but his counsel cross-examined Special Agent Reilly (Dkt. #470 at pp. 19–23). In support of his Motion to Revoke, Mixon also submitted an affidavit and letter from his common law wife, Akilah Herrod ("Herrod"), and an affidavit of his mother, Sandra Mixon (Dkt. #493-1). Both documents express the willingness of his mother and common law wife to serve as a third-party custodian over Mixon (Dkt. #493-1 at pp. 5, 8). The evidence accompanying his Motion to Revoke exclusively relates to Mixon's family ties and his children's needs (Dkt. #493-1).

The evidence shows that Mixon and his wife live in Detroit, Michigan, in a home that Herrod owns (Dkt. #493-1 at p. 5). Mixon and Herrod have been in a relationship for eighteen years

7

and have two children together—a three-year-old son and eleven-year-old daughter (Dkt. #470 at p. 29). As explained in Herrod's letter, their son is diagnosed with autism and "requires constant attention" (Dkt. #493-1 at p. 2). Herrod explains that their son's nonverbal status and complex behavioral needs make it impossible to entrust his care to others (Dkt. #493-1 at p. 2). According to Herrod's letter, releasing Mixon would allow him to provide "much-needed support" and "ease the burden" of caring for their young children (Dkt. #493-1 at pp. 2–3).

In his closing remarks at Mixon's detention hearing, Mixon's counsel noted that Mixon does not own a passport and has never left the country (Dkt. #470 at p. 29). He added that Mixon was gainfully employed at the time of his arrest by Mixon's Hauling, where he worked between thirty-five and forty hours per week (Dkt. #470 at p. 30). Mixon has also worked for Access Point Transport for the past six years (Dkt. #470 at p. 30). Mixon's supervisors at both places of employment—Tajanae Matthews and Kimberly Fairley, respectively—each confirmed that Mixon would maintain employment if released (Dkt. #470 at p. 30).

Addressing the potential danger that Mixon's release may pose to the community, Mixon's counsel recognized Mixon's prior criminal contacts (Dkt. #470 at p. 30). Mixon's counsel sought to minimize the violent nature of Mixon's prior criminal contacts by suggesting that Mixon was acquitted of all of the assaultive crimes with which he was charged (Dkt. #470 at p. 30). As to Mixon's flight risk, counsel added that "the import of Mr. Mixon's prior criminal history is that he returns to court" and stated that Mixon "always faces the music" (Dkt. #470 at p. 31). Therefore, the argument goes, there is some combination of conditions that could be fashioned to ensure his presence and eliminate his risk of endangering the community (Dkt. #470 at p. 31).

In sum, Mixon's evidence does not persuade the Court that he is neither a flight risk nor a danger to the community. *See Yusuf*, 2020 WL 607105, at *3–4 (noting that the defendant's evidence was not persuasive yet still finding that the defendant met his burden of production to defeat the presumption of detention). Granted, Mixon's burden—as one of pure production, not persuasion—is low. *United States v. Adams*, No. CR 24-121, 2024 WL 4626208, at *2 (E.D. La. Oct. 30, 2024) ("Th[e] burden of 'production' is minimal and 'not a heavy one to meet.'") (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). But that the burden is one of production does not make Mixon's burden *zero*. The fact that a defendant has submitted some evidence—no matter its character, veracity, or net sum—does not mean that a defendant has vaulted over the presumption's hurdle. It is a burden no less, and one that Mixon has not satisfied. That is especially true given that the presumption under § 3142(e)(3) applies such that the Court presumes that Mixon is both a flight risk and a danger to the community. Mixon has produced *some* evidence to rebut the former, but not the latter. *See id.* ("A defendant simply needs to produce '*some* evidence that he will not flee or endanger the community if released . . . .'") (emphasis added). None of the evidence that Mixon relies upon rebuts the presumption that he is a danger to the community. At most, any evidence contained in the letters and affidavits attack only the presumption that he is a flight risk. Still, given the paltry evidence that Mixon submitted, the Court must conclude that he has not satisfied his burden. Any other conclusion would reduce a defendant's burden to rebut the presumption under § 3142(e)(3) to virtually zero. That would be unworkable and contrary to the text of the statute, as well as the purposes of the Bail Reform Act.

Despite the fact that Mixon has not rebutted the presumption, the Court must still review the § 3142(g) factors to determine the ultimate question of whether he should be detained. *United*

*States v. Sotelo*, No. 4:20-CR-179-SDJ, 2020 WL 6684963, at *2 (E.D. Tex. Nov. 12, 2020) (citing *Jackson*, 845 F.2d at 1265) ("If the defendant does not present evidence sufficient to rebut the presumption, the Court must still review the Section 3142(g) factors."). He should. As set forth below, the Court, after weighing those factors, concludes that Mixon poses a danger to the community by clear and convincing evidence. Further, after reviewing those factors, the Court concludes that, by a preponderance of the evidence, Mixon poses a serious flight risk.

II.    **Application of the § 3142(g) Factors**

Having determined that Mixon's efforts to rebut the presumption fall flat, the Court now looks to the § 3142(g) factors to evaluate whether the Government carried its burden of proof. It has. Applying the § 3142(g) factors, and recognizing that this remains a presumption case, the Court finds that the Government proved by a preponderance of the evidence that no combination of release conditions could reasonably assure Mixon's appearance at trial and further proved by clear and convincing evidence that no such conditions could reasonably assure the safety of the public pending Mixon's trial. *See Yusuf*, 2020 WL 607105, at *4. Hence, Mixon should be detained pending trial.

A.    **The Nature and Circumstances of the Offense Charged**

The Court begins with the nature of Mixon's charged offense. Mixon is charged with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846—a serious offense. Mixon even concedes as much in his Motion for Revocation (Dkt. #493 at p. 8) (recognizing that "the indictment charges serious conduct"). Consequently, Mixon faces a lengthy sentence if convicted. Indeed, Count 1 of the Third Superseding Indictment carries a term of imprisonment of at least ten years up to life imprisonment. 21 U.S.C. § 841(b)(1)(A)(II).

10

But Mixon attempts to minimize the severity of the offense charged by separating his actions from those of his co-defendants (Dkt. #493 at p. 8). The Court is not persuaded by Mixon's attempt to distance himself from his co-defendants. Irrespective of his co-defendants, the severity of Mixon's charged offense weighs in favor of detention. *See Yusuf*, 2020 WL 607105, at *4 (finding that a charged crime that carries a sentencing range of ten years to a life term of imprisonment "weigh[ed] heavily in favor of detention").

The circumstances of the offense likewise weigh in favor of Mixon's detention pending trial. At the detention hearing, Special Agent Reilly testified regarding the details of Mixon's alleged offense and to Special Agent Reilly's involvement in the subsequent investigation leading to Mixon's indictment. He testified that, following the DEA's execution of multiple search warrants on a residence in the Dallas, Texas, area that led to the discovery of approximately sixty kilograms of cocaine, the owner of the residence ("Cooperating Defendant") began cooperating with law enforcement. Cooperating Defendant provided law enforcement with information about the supplier of the drugs, ultimately leading them to a Holiday Inn in Irving, Texas, where the supplier expected Cooperating Defendant to deliver forty kilograms of cocaine. According to Special Agent Reilly, the plan was for Cooperating Defendant to stage a drug deal with two suitcases full of fake cocaine.

When Cooperating Defendant arrived at the Holiday Inn with the suitcases, the supplier instructed him to deliver the cocaine to an adjacent Super 8 motel. Meanwhile, law enforcement observed Mixon walking back and forth between the Holiday Inn and Super 8, looking into vehicles "pretty aggressively," and speaking on the phone, ostensibly, with the supplier. According to Special Agent Reilly, this suggested that the supplier was facilitating the delivery of the cocaine

between Mixon and Cooperating Defendant. Shortly thereafter, Mixon and Cooperating Defendant met in the Super 8 lobby and boarded the same elevator. At that time, law enforcement intervened to ensure Cooperating Defendant's safety. Law enforcement converged on the elevator, where Special Agent Reilly detained Mixon. Law enforcement concluded that, given the circumstances and evidence, Mixon's intended role in the deal was to receive the forty kilograms of cocaine from Cooperating Defendant.

Special Agent Reilly testified that the investigation that led to Mixon's arrest sprung from a larger investigation of multiple drug trafficking organizations throughout North Texas. The broader investigation has led to the seizure of approximately 2,000 kilograms of methamphetamine, 200 kilograms of cocaine, 150 kilograms of heroin, 200 kilograms of marijuana, 100 kilograms of fentanyl, and $5,000,000.00 worth of assets, which includes $3,000,000.00 in cash and approximately 300 firearms. The evidence suggests that Mixon had an active role in the operation, as demonstrated by his direct communication with the Mexico-based supplier.

Despite having no clear ties to the Dallas, Texas, area, Mixon arrived in Irving, Texas, with three empty suitcases, apparently so that he could receive and transport the forty kilograms of cocaine. This suggests that Mixon had acquired a significant level of trust within the organization, given the clear risks associated with traveling across the country to transport narcotics. Thus, the circumstances of Mixon's charged offense—namely, the severity of his charged offense and his associations with a larger drug trafficking operation—weigh in favor of detention.

B.     **The Weight of the Evidence**

The Court must also consider the weight of the evidence against Defendant. Still, this factor "has been found 'to be of least importance in the detention determination.'" *Yusuf*, 2020

WL 607105, at *5 (quoting *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex.), *aff'd*, 341 F. App'x 979 (5th Cir. 2009)).

In his Motion, Mixon insists that he is "presumed innocent, and bond hearings are not the proper avenue to adjudicate guilt or innocence" (Dkt. #493 at p. 9). Consequently, he argues that "the Court cannot rely on the weight of the evidence that Mr. Mixon committed the crimes alleged in the indictment" (Dkt. #493 at p. 9). But the Government need not actually prove Mixon's guilt before the Court can consider the weight of the evidence against him. *See United States v. Roberson*, 547 F. Supp. 3d 560, 565 (N.D. Tex. 2021). In fact, § 3142 "specifically authorizes pretrial detention *before* an adjudication of guilt." *Id.* (emphasis added). Thus, the presumption of innocence "has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." *Bell v. Wolfish*, 441 U.S. 520, 533 (1979).

The Government has produced compelling evidence against Mixon. Of particular importance is Mixon's connection to the Mexico-based supplier and his travel from Michigan to Texas to receive and transport forty kilograms of cocaine. As discussed above, Mixon's willingness to travel across the country to acquire and transport narcotics indicates that Mixon is a trusted member of the drug operation. Therefore, evidence of Mixon's significant role in the drug trafficking organization also weighs in favor of detention.

### C. History and Characteristics of the Defendant

Mixon's history and characteristics undermine any suggestion that he is neither a flight risk nor a danger to the community. As mentioned, the Pretrial Services Report shows that Mixon lives in Michigan. His mother and significant other have submitted affidavits expressing their willingness to serve as Mixon's third-party custodian (Dkt. #493-1 at pp. 5, 8). Both have offered

to let Mixon live in their home if he is released pending trial (Dkt. #493-1 at pp. 5, 8). Finally, both swore that they would immediately report any violations of the conditions of Mixon's release to the Court and the assigned pretrial services officer (Dkt. #493-1 at pp. 5, 8). These facts suggest that Mixon has strong family ties and, standing alone, may weigh in favor of release. But that is not the end of the analysis.

While Mixon's Motion to Revoke argues that he does not pose a risk of nonappearance (Dkt. #493 at p. 9), the Pretrial Services Report strongly suggests otherwise (Dkt. #8). A review of the Pretrial Services Report reveals Mixon's propensity for failing to appear and having his probation revoked. The Pretrial Services Report chronicles a lengthy criminal history dating back to 1999. Most notable are a 2001 conviction for possession of a controlled substance, for which he received—and repeatedly violated—probation, and a September 2003 conviction for malicious destruction of a building and carrying a concealed weapon. The Pretrial Services Report also lists numerous assaultive offenses for which Mixon was charged but not convicted. Finally, and of particular importance, in February of 2020, Mixon was charged with a traffic offense and failed to appear, resulting in the issuance of a warrant. After pleading guilty to that offense, Mixon again failed to appear, and a second warrant was issued.

All of this evidence, combined with Special Agent Reilly's testimony establishing Mixon as a trusted member of a complex drug trafficking operation, weighs in favor of detention. *See Yusuf*, 2020 WL 607105, at *6 (citing *United States v. Volksen*, 766 F.2d 190 (5th Cir. 1985) (upholding a district court's order of detention based on the § 3142(e)(3) presumption and evidence suggesting that the defendant might flee the country to avoid prosecution)).

### D. Nature and Seriousness of the Danger Posed by the Defendant

The sum of the evidence presented by the Government, Mixon's criminal history as described in the Pretrial Services Report, and the operation of the § 3142(e)(3) presumption, indicate that Mixon has engaged in conduct that endangers the community, and he remains a danger to the community. *See Hare*, 873 F.2d at 798–99 (determining that "the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society" even after a defendant successfully rebuts the presumption). Indeed, "the risk of continued narcotics trafficking on bail does constitute a risk to the community." *United States v. Reuben*, 974 F.2d 580, 586 (5th Cir. 1992). Mixon's arrest history involving controlled substance and assaultive offenses further supports a conclusion that Mixon poses a threat to the community if released. Hence, when combined with the presumption that drug offenders have a propensity for flight and dangerousness, the Court concludes that Mixon should be detained pretrial.

In conclusion, the Court determines that Mixon has not rebutted the presumption of detention and that the Government has carried its burden on each of the § 3142(g) factors to establish that Mixon should be detained pretrial. In short, there is no combination of conditions of release that would reasonably assure Mixon's appearance for further proceedings and the safety of the community.

### CONCLUSION

It is therefore **ORDERED** that Defendant Dwayne Mixon's Motion for Revocation of Detention Order (Dkt. #493) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 17th day of January, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE